UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **WIRELESS RECOGNITION** | § | |
| **TECHNOLOGIES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CASE NO. 2:10-cv-364-JRG** |
| **A9.COM, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| **WIRELESS RECOGNITION** | § | |
| **TECHNOLOGIES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CASE NO. 2:10-cv-365-JRG** |
| **NOKIA CORPORATION, and** | § | |
| **RICOH COMPANY, LTD** | § | |
| | § | |
| **Defendants.** | § | |
| **WIRELESS RECOGNITION** | § | |
| **TECHNOLOGIES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CASE NO. 2:10-cv-577-JRG** |
| **A9.COM, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| **WIRELESS RECOGNITION** | § | |
| **TECHNOLOGIES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CASE NO. 2:10-cv-578-JRG** |
| **NOKIA CORPORATION, and** | § | |
| **RICOH COMPANY, LTD** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Before the Court are four related actions filed by Plaintiff Wireless Recognition Technologies LLC ("WRT"): (1) *Wireless Recognition Technologies LLC v. A9, Inc., et al.,* No. 2:10-cv-364-JRG ("'287 Patent Domestic Action"); (2) *Wireless Recognition Technologies LLC v. Nokia Corporation, et al.*, No. 2:10-cv-365-JRG ("'287 Patent International Action"); (3) *Wireless Recognition Technologies LLC v. A9, Inc., et al.*, No. 2:10-cv-577 ("'474 Patent Domestic Action"); and (4) *Wireless Recognition Technologies LLC v. Nokia Corporation, et al.*, No. 2:10-cv-578-JRG ("'474 Patent International Action").[1]   Plaintiff acknowledges that the "foregoing actions involve significantly overlapping issues of both law and fact" and that, between the four actions, the "patents-in-suit and claims thereof are related, the defendants are principally the same (*i.e.,* the same or related parent entities) and the infringing products are the same." *Id.*

In each of these four related actions, Defendants A9.com, Inc. ("A9"), Amazon.com, Inc. ("Amazon"), Google Inc. ("Google"), and Nokia Inc. ("Nokia") (collectively, "Defendants")[2,3] have filed nearly identical motions to transfer venue to the Northern District of California.  *See* '287 Patent Domestic Action, Dkt. No. 62; '287 Patent International Action, Dkt. No. 20; '474 Patent Domestic Action, Dkt. No. 36; '474 Patent International Action, Dkt. No. 22.  Defendants contend that in each action the Northern District of California is a more convenient forum than

---

[1] All citations to the record refer to the '287 Patent Domestic Action unless expressly stated otherwise.

[2] Defendant Ricoh Innovations, Inc. ("Ricoh") also joined the Motion.  All claims asserts in this suit between WRT and Ricoh were dismissed with prejudice on January 9, 2012.  (Dkt. No. 120.)

[3] Some of the named Defendants in the international actions differ slightly from the named Defendants in the domestic actions.  However, as WRT admits, the parties in all four cases are "the same or related [] entities."  (Dkt. No. 94, at 2.)  For convenience, the Court will use the term "Defendants" liberally to refer to the named Defendants in all four cases.

the Eastern District of Texas and seek to transfer venue pursuant to 28 U.S.C. § 1404(a).  The

Court, having considered the venue motions and the parties' written submissions, GRANTS

Defendants' motions to transfer venue because the balance of the "private" and "public" *forum*

*non conveniens* factors demonstrates that the transferee venue is "clearly more convenient" than

the venue chosen by plaintiff WRT.[4]  *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir.

2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*,

551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d

304, 315 (5th Cir. 2008) (en banc).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In each of its original complaints, WRT alleges that it is a Texas Limited Liability

Company, having an address in Austin, Texas and maintaining its principal place of business in

the Eastern District of Texas since June 24, 2010.  WRT's corporate filings indicate that it does

not have any managers, and that its ultimate parent, Acacia Research Corporation, is located in

southern California.

Defendant Google is a Delaware corporation with its principal place of business in

Mountain View, California (within the Northern District of California).  Defendant A9, a wholly-

owned subsidiary of Amazon, is also a Delaware corporation with its principal place of business

in Palo Alto, California (also within the Northern District of California).[5]  Defendant Amazon is

a Delaware corporation with its principal place of business in Seattle, Washington.  Defendant

Nokia is a Delaware corporation with its principal place of business in White Plains, New York.

---

[4] While this Opinion focuses at times on the '287 Patent Domestic Action, its analysis applies to all four related cases for the reasons discussed herein.

[5] WRT notes that A9 is "presumably" headquartered in Seattle, Washington by virtue of its 2009 acquisition by Amazon.  (Dkt. No. 68, at 2.)

Nokia is an indirect subsidiary of Nokia Corp., which is a publicly held Finnish corporation with a principal place of business in Espoo, Finland.

Defendants collectively filed these motions to transfer venue on March 23, 2011, arguing that most of the parties and relevant witnesses and evidence in this case are located in the Northern District of California.  Defendants argue that a majority of the accused products were developed in Northern California, by companies headquartered in Northern California, and by employees that live in Northern California.  By contrast, Defendants argue that no known witnesses reside in the Eastern District of Texas, no defendants are incorporated or headquartered in this District, and that it is unlikely that this District contains any relevant evidence.  As such, Defendants urge the court to transfer this case to the Northern District of California for the convenience of the parties and witnesses and in the interest of justice.

## III.    LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a).  Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a).  However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech*., 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district.  *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004).  If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district.  *Id.*  In

making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV. ANALYSIS

### A. Proper Venue

The Court must first determine if Plaintiff's claim could have originally been filed in the Northern District of California. Defendants argue that each of the accused products was available for download in California at the time that this suit was filed and that it is "beyond dispute" that this case could have originally been filed in the Northern District of California. WRT does not contest this claim. The Court concludes that the threshold question is satisfied in this case.

### B.      Private Interest Factors

#### i.      *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first "private" interest factor to consider.  Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321.  Indeed, the Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases.  *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

Defendants argue that most relevant documents for A9 and Google are located at their research and development and corporate headquarters in the Northern District of California.  For Amazon, Defendants argue that the majority of Amazon's relevant documents are located at its headquarters in Seattle, Washington, or at A9's offices in the Northern District of California, because A9 serves as Amazon's research and development arm for search technology, including the "visual search" technology that is accused in this action.  Defendants also contend that the bulk of Nokia's documents relevant to the accused technology will also be located in the Northern District of California, because the majority of Nokia's research and development of the accused products took place in Silicon Valley, California.  Moreover, Defendants argue that the Northern District of California is a more convenient venue for WRT's access to relevant documents, because Acacia Research Corporation (WRT's ultimate parent) is located in Southern California, which is much closer to the Northern District of California than the Eastern District of Texas.  Finally, Defendants argue that documents in the possession of third parties

6

also weigh in favor of transfer to California.  While several different attorneys and law firms participated in the prosecution of the patent-in-suit, the original application was filed by John F. Griffith, who currently resides in the Northern District of California.[6]

WRT responds that the named inventor and current prosecuting attorney of the '287 patent reside in Austin Texas, and that the prior assignees of the '287 patent are located in West Palm Beach, Florida.  WRT also argues that the Defendants have not established that any evidence cannot be produced electronically, or that transporting the physical evidence to Marshall, Texas would pose an additional inconvenience as opposed to transporting the same to Northern California.  WRT further contends that, for certain Defendants, the sources of proof are scattered throughout the world, in Seattle, Washington; Bangalore, India; Silicon Valley, California; London, England; Oulu, Finland; Costa Rica and Peru.

Even accepting all of WRT's arguments regarding the location of the sources of proof in this case, the Northern District of California is clearly a more convenient forum for this case.  It is undisputed that multiple defendants are headquartered in the Northern District of California, a large number of witnesses and other sources of proof are located there, and there are no identified witnesses or evidence located in the Eastern District of Texas.  That there may be

---

[6] Defendants also characterize WRT as a recently formed, ephemeral entity, designed to manipulate venue.  The Federal Circuit has made clear that recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010).  WRT responds that it made an affirmative choice to incorporate in the State of Texas, and to locate its offices in Frisco, Texas, in the Eastern District of Texas.  WRT also argues that while it is ultimately owned by Acacia, a California company, WRT's direct parent, Acacia Research Group, LLC ("ARG") is a Texas Limited Liability Company located in the Eastern District of Texas (in Frisco, Texas), that currently employs nine individuals residing in Texas, including its Chief Executive Officer.  Moreover, WRT contends that its Texas incorporation four months prior to filing suit is not a "recent" formation under Federal Circuit precedent.  *See NovelPoint Learning LLC v. LeapFrog Enterprises, Inc., et al.*, Memorandum Opinion and Order, Case No. 6:10-cv-229 (E.D. Tex. Dec. 6, 2010).  Considering that WRT was incorporated more than four months before this suit was filed, and that its direct parent corporation has nine employees in the Eastern District of Texas, the Court is not prepared to hold that WRT is "ephemeral" and created solely to manipulate venue.  Therefore, WRT's connections to Texas are given some weight.  However, even lending some weight to WRT's connections to Texas, the Court concludes that the Northern District of California is a clearly more convenient forum based on its analysis of the public and private interest factors.

some relevant sources of proof spread outside of the Northern District of California does not rebut the Defendants' showing that the Northern District of California is a clearly more convenient forum. *See In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) ("Our prior orders in venue transfer cases make clear that the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff's chosen venue is an important consideration."). WRT has failed to identify *any* witnesses or evidence located in the Eastern District of Texas.[7] On balance, the court concludes that a significantly greater amount of the sources of proof relevant to this lawsuit will be located in the Northern District of California. This factor weighs in favor of transfer to the Northern District of California.

### ii. *Availability of Compulsory Process*

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

Even though Ricoh has been dismissed from this suit, Defendants argue that several Ricoh employees remain relevant witnesses in this case because of their contributions to the prior art. In their invalidity contentions, Defendants relied upon five patents on which Ricoh employees are named inventors. Each inventor listed on the face of those patents is identified as a resident of the Northern District of California. Defendants also assert that the Northern District of California would have the power to command non-party Acacia witnesses (WRT's parent

---

[7] The inventor and prosecuting attorney of the '287 patent are located in Austin, Texas. While this is significant, the Court finds that it is not sufficient, alone, to overcome the many documents and witnesses clustered in or near the Northern District of California.

company), located in Southern California, to attend trial in the Northern District of California. WRT responds that the sole inventor and prosecuting attorney of the patent-in-suit reside in Austin, Texas, and that the previous non-party prosecuting attorneys are located in Washington, DC and McLean, Virginia.  On balance, the Court concludes that this factor weighs slightly in favor of transfer.

<em>iii.     Cost of Attendance for Willing Witnesses</em>

Next, the court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Northern District of California.  "The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *In re Genentech, Inc.*, 556 F.3d at 1342.  The Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.  Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205.  Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis."  *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

Here, as noted above, a significant number of the party witnesses reside in the Northern District of California.  Specifically, nearly all of A9's, and Google's management and technical witnesses reside in the Northern District of California, where the companies are headquartered. Further, it would be more convenient and less expensive for Amazon to bring its witnesses to the

9

Northern District of California from Seattle, than to the Eastern District of Texas, which is approximately 1,500 miles farther from Seattle than Northern California.  For Nokia witnesses, the cost of attendance in the Eastern District of Texas and the Northern District of California is approximately the same.  Also, for the same reasons discussed above, the cost of attendance for third-parties will also be approximately the same.

In total, the number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in Northern California.  The court concludes that this factor weighs in favor of transfer.

### iv.    Other Practical Problems

WRT argues that judicial economy supports maintaining this case in the Eastern District of Texas because the '287 Patent Domestic Action has been pending since 2010, and that three related cases involving similar claims and related, if not identical, parties are also pending before this Court.  The Court acknowledges the practical issues related to managing multiple actions involving overlapping issues.  However, the Defendants have filed transfer motions in all four cases, and the Court finds that transfer is warranted in all four cases.  Therefore, any issues as to judicial economy or other practical concerns related to managing these cases will be unchanged from the present because they will all be heard in the Northern District of California as opposed to the Eastern District of Texas.  Therefore, on balance, the Court concludes that this factor is neutral.

### C.    Public Interest Factors

#### i.    Court Congestion

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved.  *Genentech*, 566 F.3d at 1347.  This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors."  *Id.*  Here, the parties disagree whether the time to trial is faster in the Northern District of California versus the Eastern District of Texas.  Given the speculative nature of this factor, the court finds it to be neutral.

#### ii.    Local Interest

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).  Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

In this case, the residents of the Northern District of California have a particularized interest in the subject matter of this lawsuit because the majority of the Defendants are headquartered there.  These Defendants developed the allegedly infringing products in the Northern District of California and collectively employ thousands of people residing there.  WRT is incorporated in Austin, but is now headquartered within the Eastern District of Texas.  On the other hand, WRT's parent corporation, also located in the Eastern District, only has nine

employees.  Considering this, the court concludes that the "local interest" factor weighs in favor of transfer to the Northern District of California.

### iii.    Familiarity with the Governing Law

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203.  Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral.  *See In re TS Tech*, 551 F.3d at 1320-21.

### iv.    Avoidance of Conflict of Laws

No conflict of laws issues are expected in this case, so this factor does not apply.

## V.    CONCLUSION

Considering all of the "private" and "public" interest factors, Defendants have shown that the Northern District of California is "clearly more convenient" than the Eastern District of Texas.  Four of the § 1404(a) factors weigh in favor of transfer, and the rest are neutral or do not apply.  None of the factors weigh against transfer.  As such, Defendants' motions to transfer venue in the '287 Patent International Action (Dkt. No. 62); the '287 Patent International Action (Dkt. No. 20); the '474 Patent Domestic Action (Dkt. No. 36); and the '474 Patent International Action (Dkt. No. 22) are each GRANTED.

**So ORDERED and SIGNED this 14th day of February, 2012.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE